MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 2540
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
EDGAR GUTIERREZ, WILLIAM DELGADO,
JOSE ANTONIO GUTIERREZ, CRISTIAN
GARCIA and FERNANDO PONCE, *individually*
*and on behalf of others similarly situated,*

                              *Plaintiffs,*

                         -against-

BROADWAY SPIRITS INC. (d/b/a
BROADWAY SPIRITS) and MEGHA
DUGGAL,

                          *Defendants.*
----------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Edgar Gutierrez, William Delgado, Jose Antonio Gutierrez, Cristian Garcia and

Fernando Ponce ("Plaintiffs"), individually and on behalf of others similarly situated, by and

through their attorneys, Michael Faillace & Associates, P.C., upon information and belief, and as

against each of Defendants Broadway Spirits Inc. (d/b/a Broadway Spirits) ("Defendant

Corporation") and Megha Duggal (collectively, "Defendants"), allege as follows:

<u>**NATURE OF ACTION**</u>

    1.    Plaintiffs are former employees of Defendants Broadway Spirits Inc. (d/b/a

Broadway Spirits) and Megha Duggal.

    2.    Broadway Spirits is a Liquor store owned by Megha Duggal located at 315

Broadway, New York, New York 10007.

3.    Upon information and belief, Defendant Megha Duggal serves or served as owner, manager, principal and/or agent of Defendant Corporation and through this corporate entity operates the Liquor store.

4.    Plaintiffs were former employees of Defendants.

5.    Plaintiffs were employed as cashiers, stockers and ostensibly as delivery workers.

6.    However, the delivery workers were  required to spend a considerable part of their work day performing non-tipped, non-delivery duties including but not limited to various liquor store duties such as answering the phone, attending customers, sweeping and mopping, handing out flyers, bringing up and taking down boxes between the basement and the main floor, stocking liquor in shelves and in the refrigerators, taking out the garbage, cleaning the sidewalk , windows and the bathroom, folding cardboard boxes, watching out to prevent stealing of store products, dusting liquor bottles, being cashier and counter attendant, stocking deliveries and getting food and drinks for the manager (hereafter the "non-tipped, non-delivery duties").

7.    Plaintiffs regularly worked for Defendants without appropriate minimum wage or overtime compensation for any of the hours that they worked.

8.    Rather, Defendants failed to maintain accurate recordkeeping of their hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9.    Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

10.  Defendants employed and accounted for Plaintiffs as delivery or tipped workers in their payroll, but in actuality Plaintiffs' duties required greater or equal time spent in non-tipped, non-delivery duties.

2

11.   Regardless, at all times Defendants paid Plaintiffs at a rate that was lower than the minimum wage.

12.   Under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (12 N.Y. C.R.R. §146).

13.   Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery or tipped workers instead of non-tipped employees. This allowed Defendants to avoid paying these Plaintiffs at the minimum wage rate and enabled them to pay these plaintiffs at a lower rate.

14.   Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

15.   Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.   At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing them the overtime compensation required by federal and state law and regulations.

17.   Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law ("NYLL") §§190 and 650 *et seq*., and "overtime wage order" respectively codified at N.Y.C.R.R. Tit. 12 §§ 142-2.2, 2.4), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor

3

codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-2.4(a) (2009) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

18.   Plaintiffs seek certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.   This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question).  Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

20.   Venue is proper in this district under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this District.

## The PARTIES

*Plaintiffs*

21.   Plaintiff Edgar Gutierrez ("Plaintiff Gutierrez" or Mr. Gutierrez") is an adult individual residing in Kings County, New York. Plaintiff Gutierrez was employed by Defendants from approximately September 2nd, 2014 until on or about September 17, 2015.

22.   Plaintiff William Delgado ("Plaintiff Delgado" or Mr. Delgado") is an adult individual residing in Queens County, New York. Plaintiff Delgado was employed by Defendants from approximately November 2015 until on or about March 4th, 2016.

23.     Plaintiff Jose Antonio Gutierrez ("Plaintiff Antonio" or "Mr. Antonio") is an adult individual residing in Bronx County, New York. Plaintiff Antonio was employed by Defendants from approximately January 2015 until on or about January 8th, 2016.

24.     Plaintiff Cristian Garcia ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Queens County, New York. Plaintiff Garcia was employed by Defendants from approximately August 2015 until on or about March 25th, 2016.

25.     Plaintiff Fernando Ponce ("Plaintiff Ponce" or "Mr. Ponce") is an adult individual residing in Queens County, New York. Plaintiff Ponce was employed by Defendants from approximately June 2015 until on or about January 2016.

26.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs consent to being  parties and bring these claims based upon the allegations herein as   representative parties of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

27.    At all times relevant to this Complaint, Defendants own, operate, and/or control a Liquor store located at 315 Broadway, New York, New York 10007 under the name "Broadway Spirits".

28.    Upon information and belief, Broadway Spirits Inc. ("Defendant Corporation") is a corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 315 Broadway, New York, New York 10007.

29.    Defendant Megha Duggal is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Megha Duggal is sued individually and in her capacity as an owner, officer and/or agent of Defendant Corporation.

30.    Defendant Megha Duggal possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation and/or controlled significant functions of Defendant Corporation.

31.    Defendant Megha Duggal determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

32.    Defendants operate a Liquor store located at 315 Broadway, New York, New York 10007.

33.    Individual Defendant Megha Duggal possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

34.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

35.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

36.    Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

37.    In the alternative, Defendants constitute a single employer of Plaintiff Gutierrez and/or similarly situated individuals.

38.    Upon information and belief, individual defendant Megha Duggal operates Defendant Corporation as either an alter ego of herself and/or fails to operate Defendant Corporation as a legal entity separate and apart from herself by, among other things:

(a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

(b)    defectively forming or maintaining Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c)    transferring assets and debts freely as between all Defendants;

(d)    operating Defendant Corporation for her own benefit as the sole or majority shareholder;

(e)    operating Defendant Corporation for her own benefit and maintaining control over it as a closed corporation or closely controlled entity;

(f)    intermingling assets and debts of her own with Defendant Corporation;

(g)    diminishing and/or transferring assets of Defendant Corporation to protect her own interests; and

(h)    other actions evincing a failure to adhere to the corporate form.

39. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

40. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

41. In each year from 2014 to 2016, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

42. In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. For example, numerous items that were sold in the Liquor store on a daily basis, such as vodka and cognac, were produced outside of the State of New York.

*Individual Plaintiffs*

43. Plaintiffs are former employees of Defendants employed as stockers and ostensibly delivery workers.

44. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Edgar Gutierrez*

45. Plaintiff Gutierrez was employed by Defendants from approximately September 2nd, 2014 until September 17th, 2015.

46. At all relevant times, Plaintiff Gutierrez was employed by Defendants as a delivery worker.

47.   However, Plaintiff Gutierrez was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

48.   Although Plaintiff Gutierrez was ostensibly employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

49.   Plaintiff Gutierrez regularly handled goods in interstate commerce, such as wines and whiskeys produced outside of the State of New York.

50.   Plaintiff Gutierrez's work duties required neither discretion nor independent judgment.

51.   From approximately September 2, 2014 until on or about October 2014, Plaintiff Gutierrez worked from approximately 5:00 p.m. until on or about 11:30 p.m. or 12:00 a.m. Mondays through Wednesdays and from approximately 5:00 p.m. until on or about 12:30 a.m. or 1:00 a.m. Fridays and Saturdays (typically 37 hours per week).

52.   From approximately October 2014 until on or about September 2015, Plaintiff Gutierrez worked from approximately 5:00 p.m. until on or about 11:30 p.m. or 12:00 a.m. Mondays through Wednesdays, from approximately 6:00 p.m. until on or about 12:30 a.m.  or 1:00 a.m. on Thursdays and from approximately 5:00 p.m. until on or about 12:30 a.m. or 1:00 a.m. Fridays and Saturdays (typically 44 hours per week).

53.   Throughout his employment with Defendants, Plaintiff Gutierrez was paid his wages by check.

54.   From approximately September 2, 2014 until on or about September 17, 2015, Plaintiff Gutierrez was paid $8.00 per hour.

55.   Plaintiff Gutierrez's wages did not vary regardless of how many additional hours he worked in a week.

56.   For example, Defendants regularly required Plaintiff Gutierrez to work 30 minutes to one hour past his scheduled departure time, without paying him any additional compensation.

57.   Defendants never granted Plaintiff Gutierrez any break or meal periods of any length.

58.   However, Defendants' records falsely represent that Plaintiff Gutierrez took a 30 minute break and in addition, they illegally deducted $25 per week from his paycheck.

59.   Defendants did not provide Plaintiff Gutierrez with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

60.   Plaintiff Gutierrez was never notified by Defendants that his tips would be included as an offset for wages.

61.   Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Gutierrez's wages.

62.   Although Plaintiff Gutierrez was required to keep track of his time, Defendants required him to punch out 30 minutes to 1 hour before he completed his duties and did not compensate him for the time worked.

63.   For example, Defendants would require Plaintiff Gutierrez to punch out at 11:45 p.m. and would then require him to go out and make a delivery that would require him to work until 12:30 a.m. or 1:00 a.m.

64.   In addition, Defendants time tracking system constantly broke down and would not accurately record Plaintiffs' departure time.

65.   Defendants never provided Plaintiff Gutierrez with a written notice, in English and in Spanish (Plaintiff Gutierrez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

66.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gutierrez regarding overtime and wages under the FLSA and NYLL; Defendants posted some fliers on the walls but they never paid Plaintiff Gutierrez according to what those fliers said and furthermore, those posters were never up to date.

67.   Defendants required Plaintiff Gutierrez to purchase "tools of the trade" with his own funds—including one bicycle and $1,500 in bicycle repairs and maintenance.

*Plaintiff William Delgado*

68.   Plaintiff Delgado was employed by Defendants from approximately November 2015 until on or about March 4th, 2016.

69.   At all relevant times, Plaintiff Delgado was employed by Defendants as a stocker and ostensibly as a delivery worker.

70.   However, Plaintiff Delgado was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

71.   Although Plaintiff Delgado was ostensibly employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

72.   Plaintiff Delgado regularly handled goods in interstate commerce, such as wines and whiskeys produced outside of the State of New York.

11

73. Plaintiff Delgado's work duties required neither discretion nor independent judgment.

74. From approximately November 2015 until on or about March 2016, Plaintiff Delgado worked from approximately 5:00 p.m. until on or about 11:20 p.m. Mondays through Wednesdays and from approximately 5:00 p.m. until on or about 12:20 a.m. Thursdays through Saturdays (typically 41 hours per week).

75. Throughout his employment with Defendants, Plaintiff Delgado was paid his wages by check.

76. From approximately November 2015 until on or about March 4th, 2016, Plaintiff Delgado was paid $8.00 per hour.

77. Plaintiff Delgado's wages did not vary regardless of how many additional hours he worked in a week.

78. For example, Defendants regularly required Plaintiff Delgado to work 20 minutes past his scheduled departure time, without paying him any additional compensation.

79. Defendants never granted Plaintiff Delgado any break or meal periods of any length.

80. However, Defendants' records falsely represent that Plaintiff Delgado took a 30 minute break and in addition, they illegally deducted $25 per week from his paycheck.

81. Defendants did not provide Plaintiff Delgado with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

82. Plaintiff Delgado was never notified by Defendants that his tips would be included as an offset for wages.

83. Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Delgado's wages.

84. In addition, Defendants withheld a portion of the tips clients ordering through internet wrote in for Plaintiff Delgado.

85. Although Plaintiff Delgado was required to keep track of his time, Defendants required him to punch out 30 minutes to one hour before he completed his duties and did not compensate him for the time worked.

86. For example, Defendants would require Plaintiff Delgado to punch out at 11:00 p.m. and would then require him to go out and make a delivery that would require him to work until 11:30 p.m. or sometimes even 12:00 a.m. and would not compensate him for the additional time he worked.

87. In addition, Defendants time tracking system constantly broke down and would not accurately record Plaintiffs' departure time.

88. Defendants never provided Plaintiff Delgado with a written notice, in English and in Spanish (Plaintiff Delgado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

89. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Delgado regarding overtime and wages under the FLSA and NYLL. Defendants posted some fliers on the walls but they never paid Plaintiff Delgado according to what those fliers said and furthermore, those posters were never up to date.

90. Defendants required Plaintiff Delgado to purchase "tools of the trade" with his own funds—including one bicycle, a walkie-talkie and $600 in bicycle repairs.

*Plaintiff Jose Antonio Gutierrez*

13

91.     Plaintiff Antonio was employed by Defendants from approximately January 2015 until on or about January 8, 2016.

92.     At all relevant times, Plaintiff Antonio was employed by Defendants as a cashier and ostensibly as a delivery worker.

93.     However, Plaintiff Antonio was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

94.     Although Plaintiff Antonio was ostensibly employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

95.     Plaintiff Antonio regularly handled goods in interstate commerce, such as wines and whiskeys produced outside of the State of New York.

96.     Plaintiff Antonio's work duties required neither discretion nor independent judgment.

97.     From approximately January 2015 until on or about January 2016, Plaintiff Antonio worked from approximately 5:00 p.m. until on or about 1:30 a.m. on Thursdays from approximately 11:00 a.m. until on or about 1:30 a.m. Fridays and Saturdays, from approximately 12:00 p.m. until on or about 11:00 p.m. on Sundays and from approximately 11:00 a.m. until on or about 5:00 p.m. Mondays or Tuesdays every three weeks (typically 48.5 to 54.5 hours per week).

98.     Throughout his employment with Defendants, Plaintiff Antonio was paid his wages by check.

99.     From approximately January 2015 until on or about January 2016, Plaintiff Antonio was paid $8.00 per hour.

100.   Plaintiff Antonio's wages did not vary regardless of how many additional hours he worked in a week.

101.   For example, Defendants regularly required Plaintiff Antonio to work one to two hours past his scheduled departure time, without paying him any additional compensation.

102.   Although Plaintiff Antonio was scheduled to take meal breaks, his work duties made him unable to take any breaks or meal periods of any length.

103.   However, Defendants records falsely represent that Plaintiff Antonio took a one-hour break on Thursdays and 2 hour breaks on Fridays, Saturdays and Sundays;  In Addition, they illegally deducted two-hours of meal break on Saturdays and Sundays.

104.   Defendants did not provide Plaintiff Antonio with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

105.   Plaintiff Antonio was never notified by Defendants that his tips would be included as an offset for wages.

106.   Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Antonio's wages.

107.   In addition, Defendants withheld half of the tips clients ordering through internet wrote in for Plaintiff Antonio.

108.   Although Plaintiff Antonio was required to keep track of his time, Defendants required him to punch out 1 hour before he completed his duties and did not compensate him for the time worked.

109.   For example, Defendants would require Plaintiff Antonio to punch out at 11:00 p.m. and would then require him to go out and make a delivery that would require him to work until 12:00 a.m. without compensating him for the additional time he worked

110.   In addition, Defendants time tracking system constantly broke down and would not accurately record Plaintiffs' departure time.

111.   Defendants never provided Plaintiff Antonio with a written notice, in English and in Spanish (Plaintiff Antonio's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

112. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Antonio regarding overtime and wages under the FLSA and NYLL. Defendants posted some fliers on the walls but they never paid Plaintiff Delgado according to what those fliers said and furthermore, those posters were never up to date.

113.   Defendants required Plaintiff Antonio to purchase "tools of the trade" with his own funds—including bicycle supplies and bicycle repairs.

*Plaintiff Cristian Garcia*

114.   Plaintiff Garcia was employed by Defendants from approximately August 2015 until on or about March 25th, 2016.

115. At all relevant times, Plaintiff Garcia was employed by Defendants as a stocker and ostensibly as a delivery worker.

116. However, Plaintiff Garcia was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

117. Although Plaintiff Garcia was ostensibly employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

118. Plaintiff Garcia regularly handled goods in interstate commerce, such as wines and whiskeys produced outside of the State of New York.

119. Plaintiff Garcia's work duties required neither discretion nor independent judgment.

120. From approximately August 2015 until on or about March 25th, 2016, Plaintiff Garcia worked from approximately 10:00 a.m. until on or about 5:00 p.m. Mondays through Fridays and from approximately 4:00 p.m. until on or about 8:30 p.m. Sundays (typically 39.5 hours per week).

121. Throughout his employment with Defendants, Plaintiff Garcia was paid his wages by check.

122. From approximately August 2015 until on or about March 25th, 2016, Plaintiff Garcia was paid $8.50 per hour.

123. Plaintiff Garcia's wages did not vary regardless of how many additional hours he worked in a week.

124. For example, Defendants regularly required Plaintiff Garcia to work one hour past his scheduled departure time, without paying him any additional compensation.

125. Defendants never granted Plaintiff Garcia any break or meal periods of any length.

126. However, Defendants' records falsely represent that Plaintiff Garcia took a 30 minute break and they illegally deducted 5 to 6 hours per week from his paycheck for breaks he never took.

127. Defendants did not provide Plaintiff Garcia with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

128. Plaintiff Garcia was never notified by Defendants that his tips would be included as an offset for wages.

129. Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Garcia's wages.

130. Although Plaintiff Garcia was required to keep track of his time, Defendants required him to punch out 30 minutes to 1 hour before he completed his duties and did not compensate him for the time worked.

131. For example, Defendants would require Plaintiff Garcia to punch out at 5:00 p.m. and would then require him to go out and make a delivery that would require him to work until 6:00 p.m. without compensating him for the additional time he worked.

132. In addition, Defendants time tracking system constantly broke down and would not accurately record Plaintiffs' departure time.

133. Defendants never provided Plaintiff Garcia with a written notice, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

134. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL. Defendants posted some fliers on the walls but they never paid Plaintiff Garcia according to what those fliers said and furthermore, those posters were never up to date.

135. Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including one bicycle and $600 in bicycle repairs and maintenance.

18

*Plaintiff Fernando Ponce*

136.   Plaintiff Ponce was employed by Defendants from approximately June 2015 until on or about January 2016.

137.   At all relevant times, Plaintiff Ponce was employed by Defendants as a delivery worker.

138.   However, Plaintiff Ponce was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

139.   Although Plaintiff Ponce was ostensibly employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

140.   Plaintiff Ponce regularly handled goods in interstate commerce, such as wines and whiskeys produced outside of the State of New York.

141.   Plaintiff Ponce's work duties required neither discretion nor independent judgment.

142.   From approximately June 2015 until on or about January 2016, Plaintiff Ponce worked from approximately 5:00 p.m. until on or about 11:00 or 11:30 p.m. Mondays through Saturdays (typically 36 to 39 hours per week).

143.   The only compensation Plaintiff Ponce ever received from Defendants consisted of the tips customers would pay him each day.

144.   Plaintiff Ponce's wages did not vary regardless of how many additional hours he worked in a week.

145.    For example, Defendants regularly required Plaintiff Ponce to work 30 minutes to one and a half hour past his scheduled departure time, without paying him any compensation for the additional time they required him to work.

146.    Defendants never granted Plaintiff Ponce any break or meal periods of any length.

147.    Defendants did not provide Plaintiff Ponce with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

148.    Plaintiff Ponce was never notified by Defendants that his tips would be included as an offset for wages.

149.    Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Ponce's wages.

150.    Defendants withheld a portion of Plaintiff Ponce's tips. Specifically, Defendants withheld a percentage of credit card tips customers wrote in for the deliveries he did.

151.    Plaintiff Ponce was not required to keep track of his time because his name was not in the system, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

152.    Defendants never provided Plaintiff Ponce with a written notice, in English and in Spanish (Plaintiff Ponce's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

153.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ponce regarding overtime and wages under the FLSA and NYLL. Defendants posted some fliers on the walls but they never paid Plaintiff Ponce according to what those fliers said and furthermore, those posters were never up to date.

154. Defendants required Plaintiff Ponce to purchase "tools of the trade" with his own funds—including a set of lights, chains, locks, a helmet and bicycle repairs and maintenance for approximately $80.

*Defendants' General Employment Practices*

155.   Defendants regularly required their employees, including Plaintiffs, to work in excess of forty (40) hours per week without paying them the proper minimum wage, overtime compensation or spread of hours pay.

156.   At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs  (and all similarly situated employees) to work without paying them appropriate minimum wage and/or overtime compensation, as required by federal and state laws.

157.   At no time did Defendants inform their employees, including Plaintiffs, that they had reduced their hourly wages by a tip allowance.

158.   Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts, but did not provide them with any additional compensation.

159.   Defendants' pay practices resulted in delivery workers, including Plaintiffs, not receiving payment for all their hours worked, resulting in their effective rate of pay falling below the required minimum and overtime wage rate.

160.   Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

161.   Defendants required Plaintiffs to perform general non-delivery, non-tipped liquor store tasks in addition to their primary duties as delivery workers.

162.   Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-tipped duties.

163.   Plaintiffs were paid at a rate that was lower than the minimum wage rate by Defendants.   However, under state law, Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less). 12 N.Y. C.R.R. § 146.

164.   New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received" (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

165.   Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties including the non-tipped, non-delivery duties described herein.

166.   In violation of federal and state law, as discussed above, Defendants classified Plaintiffs as tipped employees and paid them at a rate that was lower than the minimum wage, when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

167.   As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the

FLSA and the NYLL.  This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

168.   Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

169.   Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

170.   Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

171.   Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

172.   Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

173.   Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

174.   Upon information and belief, these practices were done to disguise the actual number of hours Plaintiffs, and similarly situated employees, worked and to avoid paying them properly for their (1) full hours worked, (2) minimum wage and (3) overtime wages.

175.   Defendants employed Plaintiffs as tipped workers and required them to provide their own tools for the job, and refused to compensate them or reimburse them for these expenses.

176.   Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

177.   Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

178.   Defendants failed to post required wage and hour posters in the liquor store, and did not provide their employees, including Plaintiffs, with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of their employees', including Plaintiffs', relative lack of sophistication in wage and hour laws.

179.   Defendants failed to provide Plaintiffs  and other employees with wage statements at the time of each payment of wages containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

180.   Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

181.   Plaintiffs bring their FLSA minimum and overtime wages, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in his case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

182.   At all relevant times, Plaintiffs , and other members of the FLSA Class who are and/or have been similarly situated, had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wages, overtime pay of one and one-half times his regular rates for work in excess of forty (40) hours per workweek under the FLSA, willfully taking improper wage deductions and

other improper credits against the FLSA Class' wages for which Defendants did not qualify under the FLSA, and willfully failing to keep records required by the FLSA.

183.   The claims of Plaintiffs stated herein are similar to those of the other employees.

## **FIRST CAUSE OF ACTION**

### **(VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)**

184.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

185.   At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

186.   At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

187.   Defendants constituted an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

188.   In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs at the applicable minimum hourly rate.

189.   Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

190.   Plaintiffs were damaged in an amount to be determined at trial.

## **SECOND CAUSE OF ACTION**

### **(VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)**

191.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

192.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

193.    Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

194.    Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

195.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

196.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

197.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

198.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

199.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## (VIOLATION OF THE OVERTIME PROVISIONS OF THE

## NEW YORK STATE LABOR LAW)

200.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

27

201.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

202.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

203.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR)

204.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

205.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-2.4(a) (2009).

206.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

207.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## (VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW)

208.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

209.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

210.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### (VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW)

211.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

212.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular

hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

213.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### (RECOVERY OF EQUIPMENT COSTS)

214.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

215.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as shirts, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

216.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### (UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION OF THE NEW YORK LABOR LAW)

217.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

218.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

219.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

220.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

221.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

222.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs   and the FLSA class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs   and the FLSA class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' , and the FLSA class members', compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs   and the FLSA class members;

(f)    Awarding Plaintiffs   and the FLSA class members damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA, as applicable;

(g)     Awarding Plaintiffs   and the FLSA class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs   and the members of the FLSA Class;

(j)      Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(k)     Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs   's, and the FLSA Class members', compensation, hours, wages; and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiffs   and the FLSA Class members;

(m)    Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(n)     Awarding Plaintiffs   damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime

compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)      Declaring that Defendants' violations of NYLL § 191 were willful as to Plaintiffs and the FLSA class members;

(q)      Awarding Plaintiffs   and the FLSA class members pre-judgment and post-judgment interest as applicable;

(r)       Awarding Plaintiffs   and the FLSA class members the expenses incurred in this action, including costs and attorney's fees;

(s)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)      All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 8, 2016

                    MICHAEL FAILLACE & ASSOCIATES, P.C.


                    _____/s/ Michael Faillace_____ ___
                    By:     Michael A. Faillace [MF-8436]
                            60 East 42nd Street, Suite 2540
                            New York, New York 10165
                            (212) 317-1200
                            *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165
Faillace@employmentcompliance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

April 1, 2016

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Edgar Gutierrez

Legal Representative / Abogado:      Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                   01 de abril de 2016

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 8, 2016

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          William Delgado

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           08 de marzo de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165
Faillace@employmentcompliance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

April 1, 2016

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Cristian Garcia

Legal Representative / Abogado:     Michael Faillace & Associates, P.C._____

Signature / Firma:                    _____

Date / Fecha:                          _____01 de abril de 2016_____

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165
Faillace@employmentcompliance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

April 1, 2016

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Antonio Gutierrez Murillo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                    Jose GM

Date / Fecha:                    01 de abril de 2016

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165
Faillace@employmentcompliance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

April 5, 2016

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Fernando Ponce

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           05 de abril de 2016